IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |  |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-09-424-3 |
| | § | |
| HOWARD GRANT | § | |

## MEMORANDUM AND ORDER

This criminal case is before the Court on Defendant Howard Grant's opposed Motion to Suspend Surrender Date and for Bail Pending Appeal ("Motion") [Doc. # 905]. Having carefully considered the record in this case and having applied the governing legal authorities, the Court **denies** the Motion.

### I.    BACKGROUND

Grant was charged by Indictment with conspiracy to engage in Medicare fraud and with two related substantive counts of health care fraud. The conspiracy involved Onward Group Healthcare, Inc. ("Onward"), a company owned by Co-Defendant and co-conspirator Doris Vinitski that provided power wheelchairs and other durable medical equipment ("DME") to Medicare beneficiaries. As part of the conspiracy, Defendant John Nasky Okonkwo, who pled guilty prior to trial, billed Medicare on Onward's behalf using DME prescriptions bearing Grant's forged signature to support the billings. The United States presented evidence that Grant joined and participated

in the conspiracy by, *inter alia*, knowingly allowing forged prescriptions bearing his name to be used to obtain medically unnecessary DME for which Onward billed Medicare.

Grant was convicted by a jury, was sentenced by this Court, and has moved for bond pending appeal.

## II. LEGAL STANDARD FOR BOND PENDING APPEAL

There is no constitutional right for a defendant to be released on bond after being convicted and sentenced for an offense. *See United States v. Williams,* 822 F.2d 512, 517 (5th Cir. 1987). Under federal law, there is a presumption against granting a defendant bail after conviction and sentencing.[1] *See id.*; 18 U.S.C. § 3143(b). To obtain bail pending appeal, the convicted defendant must prove by clear and convincing evidence each of the following four factors: "(1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released; (2) that the appeal is not for purpose of delay; (3) that the appeal raises a substantial question of law or fact; and (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been

---

[1] Grant's argument that bond pending appeal is "not uncommon" based on the prosecutions of Martha Stewart and others is not persuasive.

imposed." *United States v. Valera-Elizondo,* 761 F.2d 1020, 1025 (5th Cir. 1985); *see also Williams*, 822 F.2d at 517. A question of law or fact is "substantial" if it raises a substantial doubt and could "very well be decided the other way" by the Court of Appeals. *See United States v. Clark*, 917 F.2d 177, 180 (5th Cir. 1990).

## III.  ANALYSIS

Regarding the first two factors, the Court finds that there is little likelihood that Grant will flee or pose a danger to the community if released during appeal, and finds that Grant is not pursuing an appeal solely for the purpose of delay.

Regarding the last two factors, however, the Court finds that Grant has not shown by clear and convincing evidence that there are substantial issues on appeal that are likely to result in his conviction being reversed. Grant identifies two issues to be asserted on appeal – the sufficiency of the evidence and the admission of co-conspirator statements.

### A.  **Sufficiency of the Evidence**

The appellate court will review the evidence in the light most favorable to the verdict. *See United States v. Jackson*, 625 F.3d 875, 886 (5th Cir. 2010). The Court clearly recollects the evidence presented at trial. As noted in the Court's Memorandum and Order [Doc. # 655] denying Grant's Motion for Judgment of Acquittal, the United States presented direct testimony from Javonica Moten, an

independent witness, and Co-Defendant and co-conspirator Okonkwo. The Government's evidence, which the jury was entitled to believe, indicated that Okonkwo obtained from Joseph Edem prescriptions for DME that contained Grant's forged signature. Okonkwo understood that Edem had paid doctors at Grant's medical facility $100 per DME prescription. The Government presented evidence of an extensive pattern of cash deposits into Grant's bank accounts between May 2009 and March 2010. Grant admitted he had made sizeable cash deposits into his bank accounts as shown by the Government, and indicated that this same practice had occurred during the period of the conspiracy.

The United States presented evidence that Vinitski received DME prescriptions with Grant's forged signature in early October 2008 (the "first batch"). Grant was advised of the first batch of forged prescriptions and visited Onward's office in mid-October. Vinitski showed Grant the forged prescriptions that she had received in the "first batch." Javonica Moten, an Onward employee, testified that Vinitski wanted Grant to make the prescriptions in the first batch "right" by seeing the patients and retroactively preparing the paperwork for the DME. Moten testified that Vinitski informed her that Grant "was asking for money to make those patients right." Grant testified at trial, however, that he knew the forged prescriptions could not be "made right."

Moten further testified that Okonkwo told Vinitski that Grant knew "about it; he's already been paid" for the prescriptions. Trial Transcript [Doc. # 924], p. 64. From this evidence, the jury was entitled to believe that Grant was involved in the conspiracy before Moten discovered the first batch of forged prescriptions in October 2008.

The United States also presented the testimony of Defendant Okonkwo, who described a conversation during which Vinitski stated Grant was demanding $10,000.00 from Vinitski to redo the paperwork and "to avoid any potential problem" with Medicare. From this evidence, the jury was entitled to believe that Grant was demanding additional payment above the $100 per DME prescription in order to conceal the fraudulent scheme and thus enable it to continue.

The United States presented telephone records reflecting numerous phone calls between Grant and Vinitski. The telephone conversations between the two increased in frequency after Grant visited Onward in mid-October. There were also a significant number of telephone calls and text messages between Grant and Edem into January 2009. Okonkwo provided Vinitski with additional DME prescriptions with Grant's forged signature (the "second batch") several weeks after he provided the first batch.

The Government's evidence, if believed by the jury, and the reasonable inferences that could be drawn therefrom, support the jury's verdict. The jury could

have found from the Government's evidence that Grant was aware of the forged prescriptions from the beginning and that Edem was paying him $100 per DME prescription. Alternatively, the jury could have found that Grant became aware of the forged prescriptions in mid-October 2008 and, either for cash payment or for some other reason, knowingly and willfully concealed the fraudulent submission to Medicare of the first batch of forged prescriptions and ratified the submission of the second batch to Medicare by Onward, thus enabling the conspiracy to continue.[2] From the evidence presented by the United States at trial, the jury could reasonably have found that Grant knowingly entered into the conspiracy, ratified its goals, and intentionally enabled co-conspirators to submit to Medicare prescriptions known by all parties to be false and fraudulent.

The jury was also entitled to consider Grant's own testimony when deliberating and reaching its verdict. Grant testified twice during the trial and the jury was entitled

---

[2] The Government described Grant's participation in the conspiracy in terms of ratification. The jury was entitled to believe from the evidence and reasonable inferences therefrom that Grant joined the conspiracy when Edem paid $100 for each forged DME prescription he provided to Okonkwo. Alternatively, the jury was entitled to believe that Grant joined the conspiracy when in October 2008 when he was shown the prescriptions with his forged signature, at which point he inserted himself into the conspiracy by seeking additional payment for enabling the co-conspirators to continue submitting future forged prescriptions to Medicare and for concealing the fraudulent scheme "to avoid any potential problem" with Medicare. By enabling the conspiracy to continue and concealing its fraudulent nature, Grant joined the conspiracy at that point – if not before.

to consider his credibility and to find it lacking.  Grant repeatedly changed his testimony regarding various matters, including his relationship with Edem.  He was unable to provide a clear, rational explanation for the numerous telephone and text communications with members of the conspiracy.

Dr. Grant's argument that the evidence is insufficient to prove he joined the conspiracy because he did not receive money from it is not supported by the evidence or governing legal authorities.  The United States presented evidence through Moten and Okonkwo that Grant requested $10,000.00 as payment for the forged prescriptions and that co-conspirator and Co-Defendant Doris Vinitski did not want to pay him because she understood from Okonkwo that Edem had ***already paid*** Grant for the prescriptions bearing his forged signature.

Grant's argument is also unsupported legally.  Grant was charged with one count of conspiracy to commit health care fraud and with additional substantive counts of health care fraud, including aiding and abetting under 18 U.S.C. § 2.  For such aiding and abetting, the Government was required to prove that someone committed the substantive offense (health care fraud), that Grant associated himself with the venture, that Grant purposefully participated in the criminal venture, and that Grant sought by his actions to enable that venture to succeed.  *See United States v. McDowell*, 498 F.3d 308, 313 (5th Cir. 2007).  Neither the conspiracy nor the

substantive counts (including aiding and abetting) requires proof that Grant benefitted financially from his participation in the health care fraud scheme charged in the Indictment.

As discussed herein and in the prior Memorandum and Order [Doc. # 655], the United States presented evidence that, if believed by the jury, adequately supported the jury's verdict. Grant's argument regarding the sufficiency of the evidence is unlikely to prevail on appeal.

### B. Admission of Co-Conspirator Statements

Grant argues that there is a substantial question regarding whether the co-conspirator statements were made in furtherance of the conspiracy. A statement made by a co-conspirator during the course and in furtherance of the conspiracy is not hearsay and is "routinely admitted." *See United States v. Jackson*, 625 F.3d 875, 884 (5th Cir. 2010). A statement is made in furtherance of the conspiracy if it advances the ultimate goal of the conspiracy. *See United States v. Phillips*, 219 F.3d 404, 419 (5th Cir. 2000).

Grant in his motion concedes that the statements "touch upon the conspiracy and potentially reflect that Dr. Grant had a role to play in it." *See* Motion, p. 8. Moreover, the co-conspirator statements introduced at trial described conduct in furtherance of the conspiracy. For example, co-conspirator Okonkwo testified that

Grant demanded payment from Vinitski, a co-conspirator, for the forged prescriptions that were used in furtherance of the conspiracy. Additionally, where a necessary part of the conspiracy is to conceal the fraudulent nature of the defendants' activity, statements made to promote that concealment are made "during and in furtherance of the charged conspiracy." *United States v. Curtis*, ___ F.3d ___, 2011 WL 846703 (5th Cir. Mar. 11, 2011); *United States v. Mann*, 161 F.3d 840, 859 (5th Cir. 1998). The evidence regarding Grant's negotiating for and, according to Okonkwo, receiving payment for prescriptions and to conceal the fraudulent nature of the Medicare billings constituted evidence of concealment during and in furtherance of the health care fraud conspiracy.

## IV.   CONCLUSION AND ORDER

As stated herein and in the prior Memorandum and Order [Doc. # 655], the evidence presented at trial against Grant was substantial and supported the jury's verdict. The statements of co-conspirators that were admitted into evidence during trial were made in furtherance of the conspiracy, and Grant's arguments to the contrary do not present a substantial issue on appeal. As a result, Grant has not demonstrated by clear and convincing evidence that the two issues he raises on appeal are substantial issues that are likely to result in a reversal of his conviction or sentence. It is hereby

**ORDERED** that Grant's Motion to Suspend Surrender Date and for Bail Pending Appeal [Doc. # 905] is **DENIED**.

SIGNED at Houston, Texas, this **15th** day of **March, 2011**.

                                                     Nancy F. Atlas
                                                   United States District Judge